UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

WELDON GILBERTSON and  
MARCIA GILBERTSON,

    Petitioners/Movants,

v.

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

    Respondent.

MISC. CASE NO. 13-102 (PJS/JSM)

ORDER

This matter came before the undersigned upon Movants' Motion to Quash Administrative Subpoena [Docket No. 2]. This matter had been referred to the undersigned Magistrate Judge for a Report and Recommendation by the Honorable Patrick J. Schiltz pursuant to 28 U.S.C. §636(b)(1)(A), (B) and Local Rule 72.1(c). However, the parties agreed that the motion may be decided by order of this Court (and not via a Report and Recommendation) and such order will be final for purposes of triggering the appeal provisions set forth in 12 U.S.C. §3410(d). See Order dated January 7, 2014 [Docket No. 8].

Having concluded that no hearing on the matter is necessary, this motion was decided on the parties' written submissions.

The Court, being duly advised in the premises, upon all the files, records and proceedings herein and for the reasons stated in the attached Memorandum, now makes and enters the following Order.

1

IT IS HEREBY ORDERED that Movants' Motion to Quash Administrative Subpoena [Docket No. 2] is DENIED.

Dated: January 22, 2014

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**MEMORANDUM**

Per the verified opposition of the United States Securities and Exchange Commission ("SEC") to the instant motion, on May 29, 2012, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony ("Formal Order") in the case captioned, *In the Matter of Voyager Oil & Gas, Inc.* (C-07925). Verified SEC Opp. Mem., p. 2 [Docket No. 14].[1] The Formal Order states that the SEC has information that tends to show from at least 2008 to the present that Voyager Oil & Gas, Inc. ("Voyager") or Northern Oil & Gas, Inc. ("Northern"), "their officers, directors, employees, partners, members, subsidiaries, and/or affiliates, and other persons or entities, directly or indirectly, may have been or may be:" (1) offering or selling securities in violation of the registration provisions of the federal securities laws; and (2) violating the antifraud provisions of the federal securities laws in the offer, sale, or purchase of securities. Formal Order, p. 1; Verified SEC Opp, Mem., p. 2. As a consequence,

> [t]he Formal Order specifically authorizes the Staff to investigate whether any of the abovementioned persons or entities may have been "…trading in Voyager and/or Northern securities, or trading in the securities of other issuers, by means of manipulative, deceptive, or other fraudulent devices or contrivances." The Formal Order

---

[1] At the Court's request, movants' counsel provided a copy of the Formal Order to the Court.

>authorizes the Staff to issue subpoenas for documents and to take testimony in connection with its investigation. The Formal Order also authorizes the Staff to issue subpoenas for documents and to take testimony in connection with its investigation.

Id., pp. 2-3 (quoting Formal Order, p. 2).

On December 13, 2013, and based on the Formal Order, the SEC issued a subpoena to Associated Bank in Green Bay, Wisconsin for records of all accounts maintained by the movants, Weldon and Marcia Gilbertson, from January 1, 2008 to the present, including but not limited to, a personal checking account jointly held by the Gilbertsons.[2] Id. p. 3; Affidavit of Michael M. Sawers ("Sawers Aff."), Ex. C. Specifically, the subpoena sought:

>1. All signature cards, close-out statements and other documentation relating to the opening and closing of accounts;
>
>2. All periodic account statements;
>
>3. All documents related to transactions in the accounts including, but not limited to:
>
>>a. deposit slips and copies of underling checks deposited (both sides),
>>b. canceled checks (both sides),
>>c. withdrawal slips,
>>d. debit and credit memoranda,
>>e. purchases of cashier's checks, drafts and money orders,
>>f. transfer of funds or securities to or from other financial institutions or securities firms,
>>g. transfers of funds or securities to or from other accounts, and

---

[2] The parties agree that the Gilbertson's personal checking account XXXXXXXXX1108 is the only account at Associated Bank sought by the subpoena and at issue in this motion to quash.

        h.        wire transfers, electronic fund transfers, transmittal instructions and transaction confirmations.

Sawers Aff. Ex. C.

At the same time, pursuant to requirements of the Right to Financial Privacy Act of 1978 ("RFPA"), 12 U.S.C. § 3405, the SEC notified the Gilbertsons of the issuance of the subpoena and their rights to challenge it. Verified SEC Opp. Mem., p. 3; Sawers Aff., Exs. A, B. On December 26, 2013, pursuant 12 U.S.C. § 3410(a), the Gilbertsons filed a motion to quash the subpoena, or alternatively, to narrow the scope of the subpoena to transactions among the Gilbertsons and the target of the investigation.

In support of their motion, the Gilbertsons argued they have very little connection to Voyager (in fact, Marcia Gilbertson has no connection to Voyager); they have never served as officers, directors, or employees of Voyager; the subpoena is "vague, ambiguous, and fatally overbroad" as it seeks nearly every record associated with their personal checking account for approximately the last six years, including a two-year period before Voyager came into existence; Weldon Gilbertson only used the account to transact business related to Voyager's predecessor, Plains Energy Investment, Inc. ("Plains"); and the subpoena and the Formal Order are so vague that they cannot determine what the SEC seeks to uncover from their personal bank records. Movants' Mem., pp. 1-2 [Docket No. 12]; Affidavit of Weldon Gilbertson, ¶¶ 4-6, 8. In short, the Gilbertsons maintained that the documents sought by the SEC were not relevant to its investigation.

In response, the SEC contended that the subpoenaed bank records were related to the SEC's investigation. As background, the SEC explained:

Gilbertson became a director, president, and treasurer of Plains Energy Investments, Inc. ("Plains"), a Nevada corporation, when it was formed on April 18, 2008. At that time, Gilbertson purchased 100,000 shares of Plains for $100, paid from the bank account for which the Commission seeks records.[fn3] On April 16, 2010, Ante4, Inc., a publicly held shell company, merged with Plains in a reverse merger. Gilbertson resigned from his positions at Plains prior to the reverse merger. Immediately thereafter, the new entity changed its name to Voyager Oil & Gas, Inc. and the stock held by Plains shareholders was converted into shares of Voyager stock. Voyager's stock was registered with the Commission and traded on the OTC Bulletin Board, an electronic stock quotation system. At the time of the reverse merger, Gilbertson owned 1.35 million shares of Plains. After the merger, these shares were converted into 1.17 million Voyager shares. A few days after the reverse merger, Gilbertson formed Tonkawa Energy Capital, LLC ("Tonkawa"), a Minnesota limited liability company. He then transferred his shares of Voyager to Tonkawa in exchange for a 100 percent membership interest in Tonkawa. As the only member of Tonkawa, however, Gilbertson effectively owned the Voyager shares.

In April 2010, shortly after the reverse merger, Voyager filed with the Commission a Form S-3 registration statement for a public offering of its shares by "selling shareholders." The selling shareholders consisted of approximately 100 individuals and entities that, collectively, offered 21.1 million shares of Voyager stock for sale at $3.05 per share. The selling shareholders included Tonkawa, which was offering two million shares that it owned,[fn 4] and several other limited liability companies ("LLCs"). The Form S-3 did not disclose the names of the persons who owned or controlled these LLCs. Voyager, however, filed amendments to the Form S-3 in July, October, and December 2010 (the "S-3 Amendments"). The S-3 Amendments identified the persons who controlled the shares owned by the LLCs. Each of the S-3 Amendments stated the following with regard to Tonkawa: "Jonathan Danger, manager of Tonkawa Energy Capital, LLC, exercises voting and investment control over the shares of Voyager common stock held by Tonkawa Energy Capital, LLC." The staff has evidence that Jonathan Danger was never a member, officer, or employee of Tonkawa. Therefore, the S-3 Amendments may have

misrepresented who owned its stock. Gilbertson also may have concealed his ownership of Voyager stock.

The staff is also investigating whether the ownership of Voyager stock by other entities as disclosed in Voyager's April 10th Form S-3 may have been misrepresented. Certain individuals may have disguised their ownership of Voyager shares and may have provided funds to others to purchase shares. The staff is seeking to determine the extent of Gilbertson's involvement in such transactions. The individuals who may have secretly controlled certain of the selling shareholders in Voyager's public offering, including Gilbertson, may have received or sent funds to effect the transactions in Voyager stock. As such, the bank records of individuals who control the selling shareholders are relevant to the investigation.

The Commission is also investigating Tonkawa's sales of Voyager stock. Specifically, the public offering of Voyager shares by the selling shareholders did not become effective until February 2011. Tonkawa, however, sold approximately one million shares of Voyager in late 2010, before the actual offering. This transaction may possibly have been in violation of the registrations provisions of the federal securities laws.

As a general matter, the staff is looking into whether transactions in the stock of Voyager and its predecessor and successor companies – by Gilbertson and others – have at any time violated the registration and antifraud provisions of the federal securities laws. Bank records of shareholders are relevant to determine, among other things, who bought and sold the stock, and who sent or received funds to actual or purported shareholders.

[fn 3] Also on April 18, 2008, Gilbertson's son, Ryan Gilbertson, purchased 550,000 shares in his own name for $550, and 650,000 shares through Crystal Bay Capital Consulting, LLC, an entity he controlled, for $650. On November 1, 2009, Ryan Gilbertson transferred 350,000 of these shares to his father, giving Gilbertson a total of 450,000 shares. In January 2010, as the result of a three-for-one stock split, Gilbertson's total shares of Plains increased to 1,350,000.

[fn 4] As noted above, Gilbertson's Plains shares were converted into 1.17 million Voyager shares. Gilbertson

6

> obtained additional shares which increased Tonkawa's ownership to two million shares of Voyager stock.

Verified SEC Opp. Mem., pp. 3-6.

The framework for analyzing the Gilbertsons' motion is set forth in 12 U.S.C. § 3410. This statute provides in relevant part:

> If the court finds that the applicant is not the customer to whom the financial records sought by the Government authority pertain, or that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, it shall deny the motion or application, … If the court finds that the applicant is the customer to whom the records sought by the Government authority pertain, and that there is not a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, or that there has not been substantial compliance with the provisions of this chapter, it shall order the process quashed or shall enjoin the Government authority's formal written request.

12 U.S.C. § 3410(c).

The Gilbertsons are the customers from whom the records are sought. They are not claiming that the law enforcement inquiry by the SEC is not legitimate nor are they asserting that there has not been substantial compliance with the provisions of RFPA. Rather, their sole contention is that the records sought by the SEC are not relevant to its investigation. While as the moving party, the Gilbertsons need not offer a "detailed evidentiary showing," following a prima facie showing by them on a "factual basis" that the records sought are irrelevant to the SEC's investigation, the subpoena must be quashed unless the SEC demonstrates that there is "a reasonable belief that the records sought are relevant." See In re SEC Private Investigation of Application of John Doe re Certain Subpoenas ("In re John Doe"), No. M8-85 (MBM), 1990 WL 119321, at

7

*1-2 (S.D.N.Y. Aug. 10, 1990) (quoting 12 U.S.C. § 3410(c), Hancock v. Marshall, 86 F.R.D. 209, 211 (D.D.C. 1980)); see also Walton v. U.S. Postal Service, Office of Inspector General, No. 5:13–CV–302 (CAR), 2013 WL 5522837, at *1 (M.D. Ga. Oct. 3, 2013) ("Although Respondent has the ultimate burden of proving the financial records are relevant, 'the initial burden of production is on the movant to offer proof of facts which show that the documents requested have no connection with the subject matter of the investigation.'") (quoting Breakey v. Inspector Gen. of U.S. Dep't of Agric., 836 F.Supp. 422, 425 (E.D. Mich. 1993) (referencing Hancock v. Marshall, 86 F.R.D. 209, 211 (D.D.C. 1980)); Lerman v. U.S. S.E.C., 928 F.Supp.2d 798, 802 (S.D.N.Y. 2013) ("In determining relevance in RFPA challenges, district courts in the Second Circuit are guided by the burden shifting framework established in [In re John Doe]. First, the moving party must show a factual basis for his [or her] conclusion that the records are irrelevant. If the moving party satisfies this burden, the government agency is not required to show that the records are relevant, but rather must show that there is a reasonable belief that the records sought are relevant.") (internal quotation marks and citations omitted). "A mere belief is not enough, but a reasonable belief is." In re John Doe, 1990 WL 119321, at *2.

The Court finds that the Gilbertsons' motion to quash must be denied. Not only have they failed to provide any factual basis for their assertion that the records are irrelevant, but more significantly, the SEC has met its burden of showing that there is "a reasonable belief that the records sought are relevant." 12 U.S.C. § 3410(c). Per the Formal Order, the SEC is charged with investigating from 2008 to the present whether Voyager, "and other persons or entities, directly or indirectly, may have been or may

be:" (1) offering or selling securities in violation of the registration provisions of the federal securities laws; (2) violating the antifraud provisions of the federal securities laws in the offer, sale, or purchase of securities; and (3) "trading in Voyager and/or Northern securities, or trading in the <u>securities of other issuers</u>, by means of manipulative, deceptive, or other fraudulent devices or contrivances."  Verified SEC Opp. Mem., pp. 2-3 (quoting Formal Order) (emphasis added).

The SEC is investigating whether during the time period of 2008 to the present, transactions in the stock of Voyager and its predecessors (<u>e.g.</u> Plains, Ante4) and other companies (<u>e.g.</u> Tonkawa), and individuals involved in those transactions (<u>e.g.</u> Weldon Gilbertson, Danger), may have violated federal securities laws.  As explained by the SEC, the Gilbertsons' Associated Bank records will assist the SEC in learning (a) the extent of Weldon Gilbertson's involvement in trades that may violate the registration provisions of the federal securities laws, the identity of parties who engaged in financial transactions with Gilbertson to buy or sell Voyager shares, and why Danger was identified as the manager of Tonkawa, when allegedly he was not; and (b) the records may help the SEC trace the proceeds of allegedly illegal transactions for purpose of disgorgement from, among others, Gilbertson and Tonkawa.  Verified SEC Opp. Mem., pp. 3-6, 9.  "Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct. What need be shown is not probable cause, but a good reason to investigate." <u>In re John Doe</u>, 1990 WL 119321, at *2.

Further, the scope of the subpoena is neither overly broad nor vague as argued by the Gilbertsons.  The SEC has amply explained why it is seeking records dating back

to 2008, which predates the actual formation of Voyager, and the list of items in the subpoena explicitly directs Associate Bank on what it should produce. The SEC is not required to show that every single document produced is relevant to its inquiry; rather it is sufficient if the subpoena encompasses records bearing on its investigation.

Lastly, the fact that Marcia Gilbertson is a joint owner of the account does not dictate that the subpoena should be quashed or modified. "[T]he fact that the accounts are jointly held has no bearing on the relevancy analysis because Movant still has access to these accounts." Walton, 2013 WL 5522837, at *1; see also Feiner v. U.S. S.E.C., 914 F.Supp.2d 474, 479 (S.D.N.Y. 2012) ("The fact that the SEC has cast its net broadly and may obtain information that ultimately is not directly relevant to the investigation is, without more, not a basis for the Court to quash or limit the subpoena."). "So long as the material requested touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant." Id. (citing Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd., 878 F.2d 875, 882 (5th Cir. 1989) (internal quotation marks and citations omitted) (emphasis added)). Here, the material sought by the subpoena clearly "touches a matter under investigation." For all of these reasons, the motion to quash the subpoena is denied.

J.S.M.